
UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| RAINBOW PLAY SYSTEMS, INC., | \* | CIV. 06-4166 |
| | \* | |
| Plaintiff, | \* | MEMORANDUM OPINION AND |
| | \* | ORDER RE: SUMMARY JUDGMENT |
| v. | \* | |
| | \* | |
| BACKYARD ADVENTURE, INC., | \* | |
| | \* | |
| and | \* | |
| | \* | |
| LEISURE TIME PRODUCTS, INC., | \* | |
| Defendants. | \* | |
| | \* | |
| | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

In its Third Amended Complaint (Doc. 78), Plaintiff Rainbow Play Systems, Inc., (Rainbow) brings this action against Backyard Adventure, Inc., and Leisure Time Products, Inc., (Defendants) seeking injunctive and monetary relief for alleged acts of false advertising and unfair competition under the Lanham Act, Title 15, United States Code §1051 *et seq,.* and the South Dakota Unfair and Deceptive Trade Practices Act, S.D.C.L .§ § 37-24-6, 37-24-31. Defendants have counterclaimed against Rainbow seeking injunctive and monetary relief for alleged acts of false advertising, deceptive trade practices, and unfair competition under the Lanham Act and the South Dakota Unfair and Deceptive Trade Practices Act. Defendants have also brought a cause of action for libel against Rainbow. Doc. 79.

Now pending before this Court are Rainbow's Motion for Summary Judgment against Defendants on each of Plaintiff's claims (Doc. 146) and Defendants' Motion for Summary Judgment against Rainbow and in favor of Defendants on Plaintiff's claims and for summary judgment on liability in favor of Defendants on Defendants' counterclaims under the Lanham Act and the South Dakota Unfair and Deceptive Trade Practices Act. Doc. 144. Defendants have also moved to strike affidavits and attached materials submitted by Plaintiff in support of its Motion for Summary Judgment and in opposition to Defendants' Motion for Summary Judgment on the basis that it is

not evidence that would be admissible at trial because it is either hearsay or previously undisclosed expert opinion testimony. Doc. 179.

Principles of Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

Once the moving party has met its burden, the non-moving party may not rest on the allegations of its pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 257; *City of Mt. Pleasant v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 273-74 (8th Cir. 1988). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Motion to Strike Evidence

In support of its Motion for Summary Judgment, Rainbow has filed an affidavit from Amy Wells (Doc. 156), a paralegal for Rainbow's counsel. Attached to the affidavit are materials from Internet web sites of *The Official Site of the Masters Tournament*, and from the United States Department of Agriculture at the uniform resource locator, http://www.plants.usda.gov. In response to Defendant's Motion for Summary Judgment, Rainbow attached a similar affidavit, this time from its counsel's Intellectual Property Coordinator, Carolyn Hounsell (Document No. 168). Attached to this affidavit are materials from Internet web sites of the U.S. Department of Agriculture, the

Western Red Cedar Lumber Association and the Western Red Cedar Export Association.

In support of its Reply to Defendants' Response to Plaintiff's Motion for Summary Judgment, Plaintiff filed another affidavit from Ms. Wells (Doc. 177), which attached materials from the websites for the American Lumber Standard Committee, the United States Forest Service, and a hardwood floor product known as "Bellawood."

Defendants have filed a motion to strike (Doc. 179) contending that the attachments to the affidavits are hearsay which would never be admissible at trial, and that these attachments should be stricken from Rainbow's pleadings and disregarded by the Court when ruling on the parties' motions for summary judgment. FED. R .CIV. P. 56(e) provides: "A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." The Eighth Circuit has observed,"When an affidavit contains an out-of-court statement offered to prove the truth of the statement that is inadmissible hearsay, the statement may not be used to support or defeat a motion for summary judgment." *Brooks v. Tri-Systems, Inc.*, 425 F.3d 1109, 1111 (8th Cir.2005), *quoted in Jenkins v. Winter*, 540 F.3d 742, 749 (8th Cir. 2008).

Rainbow contends that the attachments to the Wells and Hounsell affidavits do not constitute inadmissible hearsay. Rainbow contends that some of the printouts are being introduced not to prove their contents for the truth of the matters asserted therein but are being used to show marketplace recognition of how lumber classified as "Cunninghamia lanceolata," "Chinese fir," and "cedar" is marketed to the lumber industry and the general public. Rainbow further argues that even if some of the statements contained in the declarations were being offered for the truth of the matter asserted, that evidence falls within an established hearsay exception and is admissible under FED. R. EVID. 803(8)(public records)[1] and under FED. R. EVID. 803(17)(commercial publications).[2]

---

[1]Fed. R. Evid. 803(8) excludes from the hearsay rule:
> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made

3

Exhibit A (Masters website) to Amy Wells' affidavit does not fall under a hearsay exception and is also lacking in foundation and will not be considered by the Court. The Court finds, however, that the other web addresses provided present circumstantial indicia of authenticity and will consider under FED. R. EVID. 803(8) Exhibit B to Amy Wells' affidavit and Exhibit A to Carolyn Hounsell's affidavit to show that undated pages from a USDA website referred to Cunninghamia lanceolata as Chinese fir. The Court will consider Exhibit B to Carolyn Hounsell's affidavit for the limited basis of showing that pages from a USDA website last updated on July 11, 2008, referred to Cunninghamia lanceolata as Chinese fir. Under FED. R. EVID. 803(17) the Court will consider Exhibit C to Carolyn Hounsell's affidavit to show that a page from a Western Red Cedar Lumber Association website represents that the Western Red Cedar Lumber Association is a non-profit organization representing 17 producers of Western Red Cedar lumber products in Washington, Oregon and British Columbia which asserts that it supports its members' cedar products with information, education and quality standards and that the Western Red Cedar Lumber Association asserts it is "the voice of the cedar industry." Under FED. R. EVID. 803(17) the Court will consider Exhibit D to Carolyn Hounsell's affidavit to show that a page from a Western Red Cedar Export Association website represents that it is an association based in British Columbia which is a sub group of the Western Red Cedar Lumber Association.

The Court will consider under FED. R. EVID. 803(17) Exhibit 1 to Amy Wells' February 12, 2009 affidavit which shows that the AmericanLumber Standard Committe Incorporated, as a non-profit organization, in accordance with the procedures for the development of voluntary product standards of the U.S. Department of Commerce, provides manufacturers, distributors, users and consumers a mechanism to formulate and implement the Standard under which softwood lumber is produced and specified. The Court does not find adequate foundation to consider Exhibit 2, the November 1993 fact sheet regarding Cunninghamia lanceolata or Exhibit 3, the document entitled

---

pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

[2]Fed. R. Evid. 803(17)excludes from the hearsay rule: "Market quotations, tabulations, lists, directories, or other published compilations, generally used and relied upon by the public or by persons in particular occupations."

"Why Bellawood?".

Defendants in their motion to strike also contend that an affidavit (Doc. 174) Rainbow filed of its survey expert witness, Mark Ingwer, should be stricken. Defendants contend this affidavit contains 14 additional paragraphs of opinions not previously disclosed in Ingwer's expert report. The Expert Report of Ingwar is on file in Doc. 155, Ex. C. Defendants have proffered no expert report to contradict the findings of Ingwer, and have not deposed Ingwer. The Court concludes that Dr. Ingwer's report merely responds to the challenges made by the Defendants and elaborates upon his earlier report, and does not violate the requirements of FED. R. CIV. P. 26.

## FACTUAL BACKGROUND

Rainbow is a Minnesota corporation with its principal place of business in Brookings, South Dakota. Rainbow manufactures and markets wood play sets that are sold and distributed both throughout the United States and in numerous countries throughout the world. Defendants are Delaware corporations. Defendant Backyard Adventures, Inc. purchased the assets of Defendants Backyard Ventures, LP and Backyard Ventures Management, LLC. Backyard Adventures, Inc. now operates the business of making children's play sets previously operated by Defendants Backyard Ventures LP and Backyard Ventures Management, LLC. Defendant Leisure Time Products, Inc. purchased the assets of Defendant Playground, Inc., and Defendant Leisure Time Products, Inc. now operates the business of making children's play sets which was previously operated by Defendant Playground, Inc. Defendant Leisure Time Products, Inc. markets children's wooden play sets under the brands Adventure Playsets, Create-n-Adventure, Leisure Time Products and Defendant Backyard Builders. Backyard Adventures, Inc. markets children's play sets under the brand Backyard Adventures.

Defendants have stipulated that Leisure Time Products, Inc. and Backyard Adventures, Inc. and their predecessors have in the past and still do refer in their advertising and promotional materials to lumber which comes from the tree scientifically named Cunninghamia lanceolata, which is used in their play sets, as cedar. Rainbow and the Defendants are in disagreement as to whether Cunninghamia lanceolata is properly referred to as cedar.[3] Cunninghamia lanceolata is also

---

[3]One or more of the Defendants have at different times made the following statements in their marketing materials regarding the lumber used in making their play sets:

a. "We use #1 SELECT TREATED PINE or CEDAR in ALL our products."
b. "[The Model 6006 Pathfinder Deluxe is] made from Cedar and Redwood ** which shines with natural beauty and a rustic atmosphere, your little ones will have hours and hours of fun - **Other Materials Used: 1. Pine or Fir Tower Legs, 2. Pine Ground Stakes."
c. "Made from cypress and other untreated naturally decay resistant lumber."
d. "Precision cut cedar/cypress, stained, sanded and packaged for easy assembly."
e. "We've mixed the beauty of cedar with the unparalleled strength of redwood to create a play set that is aesthetically pleasing and long-lasting. Major structural components such as swing beams and legs are made of 100% California redwood for maximum strength and durability. Aesthetic components like floors, walls and roofs are cedar, equally beautiful, but less costly. Compare the wood, accessory options, construction and design of similarly-priced play sets, and you'll see why the Backyard Adventures® Explorer Series is the irrefutable leader!"
f. "manufactured using all natural redwood and cedar."
g. "made of cedar and wood guard."
h. "BACKYARD ADVENTURES® INTRODUCES IMPORTED CEDAR."
i. "Backyard Adventures® is proud to introduce China Cedar in the production of its specialty play sets for 2007. China Cedar (Cunninghamia Lanceolata) is fast becoming one of the prized species of lumber in the outdoor playground and decking business. This species is also cultivated in South America and other Asian countries. In fact, in ancient times, this tree was used in temple building because of its aesthetic beauty and durability! Why use China Cedar? The use of this wood has many benefits to our customers: Small, tight knot structure – The wood will be less likely to develop small crack emanating from knots. Clear appearance – The wood on Backyard Adventures® play sets will have a smoother and more finished appearance. Durability – China Cedar has been tested in laboratory trials for assessing natural durability. In both tests the heartwood of this species experienced extremely low weight loss and was classified as highly decay resistant. Regeneration – China also participates in Sustainable Forestry Programs planting over 1,000,000 new saplings each year with 95% livability.Like its cousin, the redwood, this species also self regenerates. After cutting the tree, new growth starts within a matter of months, creating an ever growing and environmentally friendly timber supply. China Cedar is classified by the USDA in the Cupressaceae or Cypress family. This cedar has commonly been misnamed as a fir but

commonly referred to as China fir, China cedar, or coffin wood. Rainbow's Director of Lumber Purchasing testified in his deposition that certain suppliers referred to Cunninghamia lanceolata as cedar.

Rainbow contends that by referring to Cunninghamia lanceolata as "cedar" in their advertising materials Defendants are violating the Lanham Act and the South Dakota Deceptive Trade Practice Act. Rainbow has used both *Thuja plicata* (western red cedar) and *Calocedrus decurrens* (incense cedar) lumber in its play sets and marketed both species as cedar. Rainbow admits that Thuja plicata and Calocedrus decurrens are in the Cupressaceae or cypress family. True cedars are generally grown only in the Middle East and are scientifically classified in the Pinaceae (Pine) family and in the genus cedrus. Cunninghamia lanceolata is also classified in the Cupressaceae family. Beginning in 2008, Rainbow also began to use Cunninghamia lanceolata in its play sets.[4] It later quit using Cunninghamia lanceolata in its play sets.

Rainbow's expert, Clement W. Hamilton, Ph.D., opines in his report "that it is not reasonable to assign common names involving the word 'cedar' to [*Cunninghamia*] *lanceolata*; rather, a

---

does not belong to the fir family (Pinaceae). This lumber has the same characteristics of durability, aesthetic beauty, and value as its cousins, the American redwood and other cedars, so you can be confident in the quality of your Backyard Adventures® play set. Your Backyard Adventures® play set will be a combination of redwood and imported cedar. Major structural components such as swing beams and fort uprights are made of 100% California redwood for maximum strength and durability. Other components such as floors, walls, and roofs are cedar – also strong and durable. Both woods are beautiful and allow us to continue producing the strongest most beautiful and cost efficient play sets for your family."
j. "Other components such as floors, walls and roofs are made of China Cedar – also strong and durable."

[4] In its advertising prior to 2008, Rainbow represented the lumber in its residential play sets as follows:
  a. "100% Natural Cedar and Redwood Construction."
  b. "100% Natural North American Redwood and Cedar Is Your Best Choice."
  c. "Rainbow® Branded Products Only Use 100% Genuine Cedar and Redwood Lumber."

consumer seeing the word 'cedar' could reasonably think it might refer to any of over thirty other species, but not *C. Lanceolata*." Defendants' expert, Edward C. Jensen, Ph.D., opined as follows in his report:

> I find nothing objectionable about marketing the wood of *Cunninghamia lanceolata* as Chinese-cedar (especially if is has properties similar to other species commonly marketed as "cedars"), or even shortening the name to cedar, as is commonly done with wood from most of the other false cedars. It is no less accurate marketing *Cunninghamia lanceolata* as "cedar' than it is in marketing Thuja plicata (western redcedar), or any of two dozen or so other trees ... as "cedar" when none of those trees is truly a cedar.

Defendants' expert, Charles C. Brunner, III, Ph.D. also opined in his report:

> Given the fact that *Cunninghamia lanceolata* is a member of the Cupressaceae family, as are the North American cedars, and is so similar to them in wood properties, it is logical to accept its wood as being a "cedar" for purposes of trade. In this case where the material is being used to build outdoor play equipment, it is my estimation that using the term "cedar" to describe the wood of *Cunninghamia lanceolata* is reasonable and conveys the fact that customers are receiving the wood properties they expect.

Rainbow stated that Cunninghamia lanceolata "is a Fir" in its 2006 Catalog. Rainbow contends that Cunninghamia lanceolata had been classified in a number of sources, including the U.S. Department of Agriculture, to be in the Taxodiaceae or fir family, and that once Rainbow became aware that Cunninghamia lanceolata was now being classified in the Cupressaceae family, it changed the statements in its 2007 catalog. The parties now agree that Cunninghamia lanceolata is not a fir tree.

## ISSUE I

### WHETHER THE AFFIRMATIVE DEFENSE OF UNCLEAN HANDS PREVENTS RAINBOW FROM PREVAILING ON ITS LANHAM ACT CLAIMS AGAINST DEFENDANTS?

Rainbow requests the equitable relief of injunction as well as money damages under the Lanham Act. Under the Lanham Act an award of money damages is "subject to the principles of equity." 15 U.S.C. § 1117(a). To establish a claim of false or deceptive advertising under Section

43(a) of the Lanham Act, a plaintiff must prove: (1) that a defendant made a false statement of fact about its product in a commercial advertisement; (2) that the statement actually deceived or has a tendency to deceive a substantial segment of its audience; (3) that the deception is likely to influence the purchasing decision; (4) that the defendant caused the false statement to enter interstate commerce; and (5) that the plaintiff has been or is likely to be injured as a result. *Blue Dane Simmental Corp. v. American Simmental Assoc.*, 178 F.3d 1035, 1042 (8th Cir.1999); *United Ind. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998); 15 U.S.C.A. § 1125(a). To recover money damages for false advertising under the Lanham Act, a plaintiff must prove both actual damages and a causal link between a defendant's violation and those damages. *Blue Dane Simmental Corp*, 178 F.3d at 1042.

In contending that Defendants made false statements of fact about their play sets Rainbow relies heavily upon the case of *Federal Trade Comm'n v. Algoma Lumber Co.*, 291 U.S. 67 (1934). In the *Algoma* case the Supreme Court held that sales of yellow pine products under the name "California white pine" constituted unfair competition, even if yellow pine was substantially as good as genuine white pine. In the *Algoma* case the Supreme Court observed that yellow pine was "not a white pine, whether the tests to be applied are those of botanical science or of commercial practice and understanding." 291 U.S. at 70. In the case at hand, the difference between the lumber of Cunninghamia lanceolata and cedar when measured by a commercial practice and understanding test might not support a finding that Defendants made a false statement in their advertising. Defendants accurately characterize the report of Rainbow's expert, Clement W. Hamilton, Ph.D., as addressing the species of plant or tree of Cunninghamia lanceolata, as opposed to focusing on the wood or lumber of Cunninghamia lanceolata. The lumber certainly may be more relevant to the marketing of the play sets in issue than is the scientific or botanical classification. However, Defendants contend that even if the Court accepts Rainbow's arguments that a false statement has been made in Defendants' advertisements, Defendants are still entitled to summary judgment.

Defendants argue that since *Cunninghamia lanceolata, Thuja plicata*, and *Calocedrus decurrens* are all in the cupressaceae, or cypress family, and since none of these trees are actually "cedars" in the scientific classification, Rainbow's advertisements are therefore just as false as Defendants' advertisements. Defendants further maintain that if the Court were to ultimately

conclude that Defendants' reference to *Cunninghamia lanceolata* as "cedar" is a violation of the law, because Rainbow is likewise marketing something as cedar that is not cedar, the doctrine of unclean hands bars the claims Rainbow has asserted against Defendants in this action.

The unclean hands doctrine may be asserted as an affirmative defense in a Lanham Act case. *See Stokely-Van Camp, Inc. v. Coca-Cola Co.*, 2009 WL 2390245 at *21 (S.D.N.Y. Aug. 4, 2009). The Supreme Court has long recognized that "it is essential that the plaintiff should not in his trade mark, or in his advertisements or business, be himself guilty of any false or misleading representation." *Worden v. California Fig Syrup Co.*, 187 U.S. 516, 528 (1903). To sustain an unclean hands defense in a Lanham Act case, a defendant must show that the plaintiff has engaged in inequitable conduct or bad faith and the misconduct must have a material relation to the equitable relief that the plaintiff seeks. *See* 6 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION §§31:44, 31:48 (4th Ed. 2007); *Emco, Inc. v. Obst*, 2004 WL 1737355 at *4 (C.D.Ca. July 29, 2004)(unreported Lanham Act case in which unclean hands was established as a matter of law for purposes of summary judgment). If Defendants have engaged in inequitable conduct by referring to lumber from a tree that is not classified as cedar in a scientific or botanical classification, Rainbow has also engaged in inequitable conduct. Also, Rainbow's conduct of referencing its lumber as cedar clearly has a material relation to the equitable relief that the plaintiff seeks.

Rainbow relies on *Transclean Corp. v. Bridgewood Services*, 77 F.Supp.2d 1045 (D.Minn. 1999), for the proposition that a defendant must be injured by a plaintiff's wrongdoing in order to rely on the affirmative defense of unclean hands. In the *Transclean* case, however, the Court ultimately barred all affirmative defenses because they had not been raised in a timely manner. The Court will not rely on the dicta in the *Transclean* case but will rely on the better-reasoned cases which hold that a defendant in an unfair competition case need not be injured by the plaintiff's misconduct to be able to successfully assert an unclean hands defense. *See* 6 MCCARTHY § 31:47.

In addition, the Court does not find persuasive Rainbow's arguments that it was more justified in referring to its lumber as cedar than Defendants were in referring to the lumber from Cunninghamia lanceolata as cedar. As the district court from Southern District of New York explained in *Haagen-Dazs, Inc. v. Frusen Gladje Ltd.*, 493 F.Supp. 73, 76 (S.D.N.Y. 1980):

> [S]ince plaintiff itself has attempted to package its product in such a way as to give the impression that it is of Scandinavian origin, although it too is, in fact, of domestic origin, it is guilty of the same deceptive trade practices of which it accuses defendants. In short, since plaintiff's hands are similarly unclean, they may not secure equitable relief simply because defendants' hands may be a shade or two less clean.

Defendants are entitled to summary judgment against Rainbow on Rainbow's Lanham Act claim based on the affirmative defense of unclean hands.

## II.
## WHETHER DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AGAINST RAINBOW ON RAINBOW'S CLAIM UNDER THE SOUTH DAKOTA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT?

Rainbow alleges in Count II of its Third Amended Complaint, regarding violation of the South Dakota Deceptive Trade Practices Act, that Defendants' acts have caused irreparable injury and unless restrained, will continue to do so. Rainbow also adds: "Plaintiff has no adequate remedy at law." To the extent that Rainbow is seeking equitable relief for the alleged violations of the South Dakota Deceptive Trade Practices Act, Defendants are entitled to summary judgment based on the affirmative defense of unclean hands for the reasons discussed in the preceding section. The Court also finds that Defendants are entitled to summary judgment against Rainbow for any action for damages as set forth by statute under the South Dakota Deceptive Trade Practices Act.

S.D.C.L. § 37-24-6 provides:

> It is a deceptive act or practice for any person to:
>
> (1) Knowingly and intentionally act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been mislead, deceived, or damaged thereby[.]

The above statute, however, is a criminal proscription under which a plaintiff in a civil action has no individual rights of enforcement. *See Sisney v. Best Inc.*, 754 N.W.2d 804, 811 (S.D.2008). S.D.C.L. § 37-24-31 allows a plaintiff in a civil action a claim for damages pursuant to the South Dakota Deceptive Trade Practices Act but specifically requires a causal connection between the alleged deceptive practice and the damages suffered by a plaintiff. This statute provides: "Any person

who claims to have been adversely affected by any act or a practice declared to be unlawful by § 37-24-6 shall be permitted to bring a civil action for the recovery of actual damages suffered as a result of such act or practice."

The broad statutory language of the South Dakota Deceptive Trade Practices Act protects more than only consumers. *See Moss v. Guttormson*, 551 N.W.2d 14 (S.D. 1996)(employee salesman could recover when employer's scheme to defraud customers was concealed from employee and employer's dishonest practices marred employee's reputation). However, to recover in an action under the South Dakota Deceptive Trade Practices Act, a plaintiff must have relied on the alleged misrepresentation. *See Nygaard v. Sioux Valley Hospitals & Health System*, 731 N.W.2d 184 (S.D. 2007)(action dismissed when plaintiff patients failed to allege their beliefs caused them to select hospitals making alleged misrepresentations). There is no evidence that Rainbow relied on Defendants' representations that Cunninghamia lanceolata is cedar. To the contrary, the evidence is undisputed that in its 2006 promotional materials, Rainbow disputed that Cunninghamia lanceolata was cedar and stated that Cunninghamia lanceolata "is a Fir." Rainbow has failed to produce evidence of it reliance on the alleged misrepresentation and has not established the requisite causal connection imposed by S.D.C.L. § 37-24-31. Defendants are therefore entitled to summary judgment on Rainbow's cause of action under the South Dakota Deceptive Trade Practices Act.

III.

WHETHER DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR COUNTERCLAIMS FOR VIOLATION OF THE LANHAM ACT AND THE SOUTH DAKOTA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT?

Defendants base their Lanham Act and South Dakota Unfair and Deceptive Trade Practices Act claims on Rainbow having communicated in its promotional materials that "Chinese Cedar" is not actually "cedar" but is a "fir." Rainbow admits to having stated in its promotionalmaterials: "Some playground manufacturers can be misleading when advertising that they are producing a 100% Cedar play set. Chinese Fir looks and smells like Cedar but it is a Fir." Defendants maintain that they are prejudiced and damaged when consumers are made to think, as a result of Plaintiff's advertising, that Defendants' play sets are made out of "fir." Rainbow has submitted evidence that when it made these statements, Cunninghamia lanceolata had been referred to by some as being in

the Taxodiaceae family, and Rainbow contends that Cunninghamia lanceolata, while previously classified in the Taxodiaceae family, has since been re-classified in the Cupressaceae family. Rainbow further contends it had a good-faith, reasonable basis for the statements it made in its 2006 catalog with respect to Cunninghamia lanceolata lumber, and that it subsequently changed the statements in the 2007 catalog. The Court agrees that genuine issues of material fact exist with regard to whether the statements were deceptive and material. The Court also notes that there are genuine issues of fact regarding reliance and denies Defendants' motion for summary judgment on Defendants' Lanham Act and South Dakota Unfair and Deceptive Trade Practices Act claims.[5]

Accordingly,

IT IS ORDERED:

1. Defendants' motion to strike (doc. 179) is granted in part and denied in part as set forth in this Memorandum Opinion:

2. That Defendants' Motion for Summary Judgment against Rainbow and in favor of Defendants on Plaintiff's claims is granted.

3. That Defendants' Motion for Summary Judgment against Rainbow and in favor of Defendants on Defendants' counterclaims is denied.

Dated this 28th day of September, 2009.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: Summer Uahufuel
(SEAL)     DEPUTY

---

[5] Although Defendants alleged libel in their counterclaim, they did not submit argument in support of summary judgment on this count of their counterclaim.